IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAUN WARRICK, | : | Civil No. 3:23-cv-591 |
| Plaintiff | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | |
| SECRETARY LAUREL HARRY, et al., | : | |
| | : | |
| Defendants | : | |

FILED
SCRANTON

JAN 26 2024

PER _____
DEPUTY CLERK

## MEMORANDUM

Plaintiff Shaun Warrick ("Warrick"), an inmate who was housed, at all relevant times, at the State Correctional Institution, Camp Hill, Pennsylvania ("SCI-Camp Hill"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Docs. 1, 1-1). Named as Defendants are Secretary Laurel Harry, Sergeant Donna Green, Counselor Yvette Nettles, Officer Barksdale, Officer Harrison, and Officer Buelto. (Doc. 1-1 ¶ 4). Presently pending before the Court is Defendants' motion (Doc. 16) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

### I.  Allegations of the Complaint

Warrick alleges that on April 19, 2021, Defendant Green ordered him to pack his belongings. (Doc. 1-1 ¶ 6). Warrick claims that he complied with this order and packed his personal property. (Id. ¶ 7). He then approached Unit Manager Ms. Serbo to ask which cell he was moving to. (Id. at ¶ 8). Warrick was informed of the cell assignment, proceeded to

the cell, and noticed that his new cellmate was not in the cell. (*Id.* ¶ 9). He went to inform Defendant Nettles that the cellmate was not there. (*Id.* ¶ 10). Defendant Green then allegedly walked into Warrick from behind and bumped him, "in an attempt to provoke him." (*Id.* ¶ 11). Warrick alleges that Defendant Green tapped him from behind without saying anything while Warrick was talking to the counselor. (*Id.* ¶ 12). "[W]ithout warning," Defendant Green sprayed Warrick with oleoresin capsicum ("OC") spray from behind, which caused disorientation, inability to see, burning skin, and difficulty breathing. (*Id.* ¶¶ 13-14). Warrick attempted to stop the assault. (*Id.* ¶ 15). He alleges that Defendants Buelto, Barksdale, and Harrison then slammed Warrick on the ground. (*Id.*). Warrick suffered injuries to his neck, back, and hands (from the handcuffs). (*Id.*). Warrick alleges that the assault continued after he was handcuffed. (*Id.*). He claims that no orders were given, and he did not refuse any orders. (*Id.* ¶ 16). Warrick further claims that he did not pose a threat prior to being sprayed with OC spray. (*Id.* ¶ 17).

Warrick alleges that Defendant Harry gives OC spray to her staff and ignores complaints about staff using the spray maliciously to retaliate or punish. (*Id.* ¶ 18).

Warrick was taken to the medical department after the assault and had his eyes flushed. (*Id.* ¶ 19). Warrick alleges that medical staff did not treat his other injuries. (*Id.*). Warrick asserts that he reported his injuries to the medical department at SCI-Camp Hill, and again at SCI-Mahanoy and SCI-Phoenix, but the prison officials refused to treat him. (*Id.* ¶ 20).

Warrick was then taken to "isolation," and placed in an empty cell without running water. (*Id.* ¶ 21). Warrick alleges that Defendant Harry approved an emergency transfer and recommended that Warrick be placed on the Restricted Release List ("RRL"). (*Id.* ¶ 22). Warrick claims he does not meet the criteria for RRL. (*Id.* ¶ 23). He asserts that Defendant Harry watched the video footage and read the reports from the incident but refused to act. (*Id.* ¶ 24). Instead, Warrick believes that Defendant Harry justified her actions by falsely reporting that he had a knife. (*Id.*).

The security department at SCI-Camp Hill interviewed Warrick. (*Id.* ¶ 31). When he complained about the assault, Warrick alleges that Defendant Harry retaliated against him by transferring him without his medical records or personal property. (*Id.*).

He further claims that he was transferred before he had an opportunity to seek medical care. (*Id.* ¶ 25).

On April 19, 2021, while housed at SCI-Mahanoy, Warrick received a misconduct report. (*Id.* ¶ 27). A misconduct hearing was held on May 5, 2021. (*Id.*). Prison officials at SCI-Mahanoy allegedly informed Warrick that Defendant Harry directed that he be placed on RRL regardless of the outcome of his misconduct hearing. (*Id.* ¶ 32). As a result of Defendant Harry's actions, Warrick alleges that he did not receive medical treatment for weeks. (*Id.* ¶ 35).

Warrick claims that Defendant Green retaliated against him "for complaining about her arbitrary cell moving practices." (*Id.* ¶ 28). He also alleges that Defendant Green

ignores prison policy regarding compatibility of inmates, and places inmates in cells even when the cellmate is not present. (*Id.* ¶ 29). Warrick claims that this practice leads to inmate assaults. (*Id.* ¶ 30).

Defendants move to dismiss certain claims pursuant to Rule 12(b)(6). The motion is fully briefed and ripe for resolution.[1]

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

---

[1] Warrick's brief in opposition to Defendants' motion to dismiss contains facts that are not expressly set forth in the amended complaint. The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

(internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

5

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Claims against Defendant Nettles

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior.*" *Id.* In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs...shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. A plaintiff must establish the particulars of conduct, time, place, and the person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may

6

have had knowledge of, or personal involvement in, the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

In the complaint, Warrick alleges that he informed Defendant Nettles that his cellmate was not present in the cell when he was moving into the cell. (Doc. 1-1 ¶ 10). There are no other factual allegations against Defendant Nettles in the complaint. Warrick fails to include any allegations indicating that Defendant Nettles participated in the alleged wrongs through factual allegations of personal direction or of actual knowledge and acquiescence. The lone allegation against Defendant Nettles fails to establish her personal involvement and she is entitled to dismissal on this ground.

### B.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."

7

*Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005) (nonprecedential). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002). With these elements in mind, the Court will address Warrick's two retaliation claims.

Warrick alleges that Defendant Green retaliated against him for "complaining" about the cell move because she ignores policies relating to inmate cell moves. (Doc. 1-1 ¶¶ 28-30). Defendants argue that Warrick's general complaint is not constitutionally protected conduct. (Doc. 22, pp. 9-10). The Court is not persuaded by Defendants' argument and finds that Warrick's informal complaint is a constitutionally protected activity. See *Wisniewski v. Fisher*, 857 F.3d 152, 157 n.4 ("[inmate's] complaints to prison officials and inmate requests implicate conduct protected by the First Amendment"); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (concluding that the prisoner-plaintiff engaged in constitutionally protected activity when informed prison officials of his intent to file a grievance and he requested a grievance form). The motion to dismiss the retaliation claim asserted against Defendant Green will be denied.

Warrick also alleges that Defendant Harry retaliated against him for reporting the assault by transferring him without his medical records or personal property. (Doc. 1-1 ¶ 31). Defendants concede, for purposes of their motion, that Warrick was engaged in protected activity by reporting the alleged assault. (Doc. 22, p. 10). However, they argue that Warrick fails to allege that the report motivated Defendant Harry to take any adverse action. (*Id.*).

Prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. See *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215 225 (1976).

9

Therefore, in general, a transfer from one cell or bunk assignment to another is insufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See, e.g., Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *21 (D.N.J. Mar. 30, 2012) *aff'd*, 489 F. App'x 544 (3d Cir. 2012) ("Because Smith has no protected constitutional right to a housing assignment, he cannot claim 'adverse action' when his housing assignment was changed."); *Manning v. Flock*, No. 1:11-CV-0293, 2012 WL 1078227, at *11 (M.D. Pa. Mar. 30, 2012). Rather, a plaintiff must allege that the impact of the housing change was sufficiently negative so as to constitute an adverse action. *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (holding that conditions of confinement in a particular prison housing unit may deter a person of ordinary firmness from exercising his First Amendment rights); *Allah*, 229 F.3d at 225 (same).

Defendants contend that the decision to transfer an inmate is not retaliatory where it serves a legitimate penological interest. (Doc. 22, pp. 10-11) (citing *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010)). Defendants cite to their interest in maintaining order and security and that the decision to transfer Warrick after an assault with a staff member is a decision that rests with prison officials. (*Id.*). The factual allegations of the complaint do not establish that Warrick's transfer was an adverse action. Warrick acknowledges that an assault occurred, and that Defendant Harry approved an "emergency transfer" after the incident. (Doc. 1-1 ¶ 22). The Third Circuit has repeatedly held that protecting "the safety and stability of the institution" is a legitimate penological interest. *See, e.g., Davis v.*

*Pennsylvania*, 244 F. App'x 445, 447 (3d Cir. 2007). It is not this Court's function to second-guess the rational decision of prison officials that an inmate transfer serves the legitimate penological interest of maintaining safety and security within the institution.

Because Warrick has failed to plead an adverse action—and, thus, has not set forth a claim for retaliation—the Court need not reach the third prong of a claim for retaliation, and makes no determination as to whether Warrick has pled the existence of a causal link.

The Court will grant Defendants' motion to dismiss Warrick's complaint as it relates to the First Amendment retaliation claim asserted against Defendant Harry.

### C. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is

met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1. *Denial of Medical Care Claim*

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F.

Supp. 1335, 1339 (M.D. Pa. 1988); see also *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981). Moreover, "[i]f a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

In the complaint, Warrick alleges that after the use of OC spray and the alleged assault, he was transported to the medical department where his eyes were flushed. (Doc. 1-1 ¶ 19). Warrick maintains that medical staff failed to treat his other injuries. (*Id.*). Warrick has failed to state a claim against Defendants. By Warrick's averments, Defendants are not medical providers and have not treated him. Because Defendants are not medical personnel, they cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991). Moreover, Warrick does not plead facts from which a plausible inference could be drawn that Defendants had "reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [him]." *Spruill*, 372 F.3d at 236. Accordingly,

the Court will grant Defendants' motion to dismiss the Eighth Amendment inadequate medical care claim.

### 2.   *Conditions of Confinement Claim*

Not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, a condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Warrick asserts that Defendant Harry violated his Eighth Amendment rights by placing him on the RRL. (Doc. 1 ¶¶ 31-34). It is well-settled that mere placement on the RRL does not violate the Eighth Amendment. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). *See also Booze v. Wetzel*, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014) ("[M]ere placement on AC, on the RRL, does not violate the Eighth Amendment"). However, allegations of prolonged solitary confinement as a result of an inmate's RRL status may be sufficient to state an Eighth Amendment claim upon which relief may be granted. *See Clarke v. Coupe*, 55 F.4th 167, 179-80 (3d Cir. 2022); *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017). Warrick does not allege that his RRL placement has led to continued solitary confinement. In fact, he fails to state how long he was placed in solitary confinement, if at all. The allegations of the complaint only state that Defendant Harry

14

"recommended that the Plaintiff be placed on the restricted release list." (Doc. 1-1 ¶ 22). As noted, in order to assert a violation of the Eighth Amendment, a prisoner must allege that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin*, 112 F.3d at 709. This is a difficult standard to meet, and Warrick's complaint, as pled, fails to assert such a deprivation. The Court will dismiss this Eighth Amendment claim without prejudice and with leave to amend in order to allege sufficient facts related to Warrick's placement on the RRL.

### 3. *Use of OC Spray*

Warrick also takes issue with the use of OC spray. (Doc. 1-1 ¶ 18). He appears to assert that his Eighth Amendment rights were violated because Defendant Harry provides OC spray to prison staff. (*Id.*). Courts have found that the "use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020). Warrick has not alleged that the OC spray was used in a greater quantity than necessary or that he suffered any injuries "beyond the temporary discomfort of the OC spray." *Id.* Nor has he alleged that the use of OC spray posed a serious risk of harm to him, and that Defendant Harry was subjectively aware of such a risk. As such, this Eighth Amendment claim fails.

### IV. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal...should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). As set forth above, the following claims are factually and legally flawed—the claims against Defendant Nettles, the First Amendment retaliation claim and Eighth Amendment use of OC spray claim against Defendant Harry, and the Eighth Amendment inadequate medical care claim. Thus, the Court concludes that allowing leave to amend with respect to these claims would be both futile and inequitable. *See id.* at 108. However, the Court will grant Warrick leave to amend his Eighth Amendment conditions of confinement claim.

## V. Conclusion

Based on the foregoing, Defendants' motion (Doc. 16) to dismiss will be granted in part and denied in part. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: January 26, 2024