IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAUN WARRICK, | Civil No. 3:23-cv-591 |
| Plaintiff | (Judge Mariani) |
| v. | |
| SECRETARY LAUREL HARRY, et al., | |
| Defendants | |

## MEMORANDUM

Plaintiff Shaun Warrick ("Warrick"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Docs. 1, 1-1). In the original complaint, Warrick named the following Defendants: Secretary Laurel Harry[1], Sergeant Donna Green, Counselor Yvette Nettles, Officer Barksdale, Officer Harrison, and Officer Buelto. (Doc. 1-1 ¶ 4). Defendants previously filed a motion (Doc. 16) to dismiss the original complaint. By Memorandum and Order dated January 26, 2024, the motion was granted in part and denied in part. (Docs. 33, 34). Specifically, the Court dismissed the claims against Defendant Nettles, dismissed the First Amendment retaliation claim against Defendant Harry, dismissed the Eighth Amendment inadequate medical care claim, dismissed the Eighth Amendment use of oleoresin

---

[1] Laurel Harry is the current Secretary of the Pennsylvania Department of Corrections and, previously, was the Superintendent/Facility Manager at the State Correctional Institution at Camp Hill, Pennsylvania.

capsicum ("OC") spray claim against Defendant Harry, and dismissed the Eighth Amendment conditions of confinement claim against Defendant Harry without prejudice and with leave to amend only with respect to this claim. (*Id.*). On February 8, 2024, Warrick filed an amended complaint. (Doc. 35). Defendant Harry then moved to dismiss the Eighth Amendment conditions of confinement claim. (Doc. 36). By Memorandum and Order dated April 5, 2024, the Court denied Defendant Harry's motion to dismiss. (Docs. 47, 48).

Presently pending before the Court is a motion (Doc. 20) for summary judgment by Defendants Buelto, Green, Barksdale, and Harrison. The motion is ripe for resolution. For the reasons set forth below, the Court will grant the motion.

I.  **Statement of Undisputed Facts**[2]

Warrick was incarcerated at SCI-Camp Hill from December 6, 2020, to April 20, 2021. (Doc. 21 ¶ 4). On April 19, 2021, Defendant Buelto was conducting cell moves into

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 21). Warrick filed a brief in opposition to Defendants' motion for summary judgment, however he failed to file a response to Defendants' statement of material facts. Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* M.D. PA. LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

2

the new kitchen cohort from the control bubble. (*Id.* ¶ 5). Warrick did not agree with his cell move. (*Id.* ¶ 6).

On April 19, 2021, Warrick was standing at the control bubble. (*Id.* ¶ 7). Defendant Green walked onto L Block A-Side and saw Warrick standing at the control bubble. (*Id.* ¶ 8). Green stood at the bottom of the staircase to the control bubble and gave Warrick a direct order to remove himself from the front of the bubble and return to his cell. (*Id.* ¶ 9). Warrick refuses Green's direct order. (*Id.* ¶ 10). Green goes up the stairs to the control bubble and approaches Warrick. (*Id.* ¶ 11). Green again gives Warrick direct orders to remove himself from the front of the bubble and return to his cell. (*Id.* ¶ 12). During this time, Green's left arm is completely outstretched. (*Id.* ¶ 13). Green then touches Warrick's right shoulder with her left hand. (*Id.* ¶ 14). Green then deployed OC spray due to Warrick's refusal to obey the orders. (*Id.* ¶ 15). Warrick then hits Green with his right fist approximately six (6) times. (*Id.* ¶ 16). Warrick then runs down the control bubble stairs. (*Id.* ¶ 17). Warrick was then apprehended by Harrison and Barksdale and put on the ground. (*Id.* ¶ 18). Warrick was then restrained with hand restraints on the ground. (*Id.* ¶ 19). Warrick was assisted to his feet by Harrison and Barksdale. (*Id.* ¶ 20). Warrick was escorted out of L Block A-Side. (*Id.* ¶ 21). Warrick was immediately escorted to receive medical treatment. (*Id.* ¶ 22).

Warrick generally alleges that: Green told him to move his belongings; Green bumped him with her shoulder, tapped him from behind, and then sprayed pepper spray

from behind; and retaliated against him for complaining about the cell move because she ignored policies relating to inmate moves. (*Id.* ¶ 23). Defendants maintain that Warrick cannot produce any competent admissible evidence that Green used excessive force against him. (*Id.* ¶ 24). Specifically, they assert that: Warrick cannot produce any competent admissible evidence that there was no need for the application of force shown by Green; Warrick cannot produce any competent admissible evidence that the amount of force used by Green was not reasonable based on the need for force; Warrick cannot produce any competent admissible evidence that he received any non *de minimus* injury from Green's use of force; Warrick cannot produce any competent admissible evidence that there was no threat to staff or inmate safety due to Warrick's actions; Warrick cannot produce any competent admissible evidence that there were no efforts made to temper the severity of Green's response as she gave Warrick several orders, which he refused, and attempted to resolve the issue without force. (*Id.*).

Defendants maintain further that Warrick cannot produce any competent admissible evidence that Green retaliated against him. (*Id.* ¶ 25). Specifically, they assert that: Warrick cannot produce any competent admissible evidence that he was engaged in constitutionally protected conduct; and, that Warrick cannot produce any competent admissible evidence to support the fact that Green took an adverse action against him as a result of him engaging in constitutionally protected conduct. (*Id.*).

4

Warrick generally alleges that Buelto, Barksdale, and Harrison, slammed him into the ground when he tried to stop Green from assaulting him and caused injuries to his neck, back, and hands. (*Id.* ¶ 26). Warrick also alleges that Buelto, Barksdale, and Harrison continued to assault him after he was handcuffed. (*Id.* ¶ 27). Defendants maintain that Warrick cannot produce any competent admissible evidence that Buelto, Barksdale, and Harrison used excessive force against him. (*Id.* ¶ 28). Specifically, they assert that: Warrick cannot produce any competent admissible evidence that there was no need for the application of force shown by Buelto, Barksdale, and Harrison; Warrick cannot produce any competent admissible evidence that the amount of force used by Buelto, Barksdale, and Harrison was not reasonable based on the need for force; Warrick cannot produce any competent admissible evidence that he received any non *de minimus* injury from Buelto's, Barksdale's, and Harrison's use of force; Warrick cannot produce any competent admissible evidence that there was no threat to staff or inmate safety due to Warrick's actions; Warrick cannot produce any competent admissible evidence that there was an opportunity to temper the severity of Buelto's, Barksdale's, and Harrison's response to apprehending an inmate following an assault on a staff member. (*Id.*).

Warrick's only injuries following the incident was wrist pain from the handcuffs and a red face from the OC spray. (*Id.* ¶ 29).

On June 29, 2021, an affidavit of probable cause was filed relating to Warrick's April 19, 2021, assault on Green. (*Id.* ¶ 30). On June 29, 2021, a criminal complaint was filed

5

against Warrick for the following charges: (1) aggravated assault—attempts to cause, or causes, serious bodily injury to designated individuals; (2) assault by a prisoner; (3) simple assault; and (4) inmate procure, make, or otherwise provided self with weapon. (*Id.* ¶ 31). Warrick entered a plea of no contest and was sentenced to a term of imprisonment of twenty-four to forty-eight months, to run concurrent to any other sentence that Warrick is serving. *See Commonwealth v. Warrick*, No. CP-21-CR-0002605-2021 (Ct. Com. Pl. Cumberland Cnty.).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S.

at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

7

## III. Discussion

Defendants move for summary judgment on the following grounds: (1) Warrick failed to establish that Buelto had any personal involvement in the excessive force claim; (2) Warrick failed to establish an Eighth Amendment excessive force claim against Green, Barksdale, and Harrison; and (3) Warrick cannot establish any basis for damages. (Doc. 25).

### A. Claims against Defendant Buelto

Defendant Buelto moves for summary judgment based on a lack of personal involvement in the April 19, 2021 incident of which Warrick complains. (Doc. 25, p. 6). Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs…Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an

individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201-202 (3d Cir. 2000). And a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Rode*, 845 F.2d at 1207.

With respect to Defendant Buelto, the record reflects that he did not have any involvement in the use of force incident on April 19, 2021. The undisputed evidence confirms that Buelto was assigned to the control bubble on April 19, 2021. (Doc. 21-2). Buelto observed Warrick on the steps of the control bubble and observed the altercation between Warrick and Defendant Green. (*Id.*). Buelto immediately called for staff assistance when he observed Warrick striking Defendant Green. (*Id.*). Based on the record, the Court concludes that Defendant Buelto was not personally involved in any wrongdoing whatsoever. Accordingly, Defendant Buelto is entitled to an entry of summary judgment.

### B.     Eighth Amendment Excessive Force Claim

In this case, there are two distinct applications of force at issue. The first concerns Defendant Green's use of OC spray to compel Warrick to obey orders and return to his cell. The second occurred when Defendants Harrison and Barksdale restrained Warrick and escorted him off the housing block.

In an Eighth Amendment excessive force case, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not "every malevolent touch by a prison guard" violates the Constitution. *Id.* at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). To establish an Eighth Amendment excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than de minimis, injury. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Rather, the central issue is the force used by the officer, not the resultant injury. *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

When determining whether a prison official has used excessive force, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

Here, Warrick's claim ultimately fails because there is insufficient evidence for a reasonable factfinder to conclude that the use of force was maliciously and sadistically

10

intended to cause harm to Warrick. The undisputed facts and videotape evidence demonstrate that: (1) prior to the deployment of OC spray, Warrick refused Defendant Green's orders to return to his cell; and (2) Defendants Barksdale and Harrison resorted to force to effect compliance only after Warrick assaulted Defendant Green.

For the first and second *Whitley* factors, there is undisputed evidence of a need to use force, and a reasonable juror could not find that attempts to secure Warrick were unreasonable or excessive. The surveillance video, sans audio, commences with Warrick walking up to the control bubble and Green walking onto the block. Green stands at the bottom of the staircase to the control bubble and talks to Warrick. The parties agree that Green gives a direct order for Warrick to remove himself from the front of the bubble and return to his cell. (Doc. 21 ¶ 9; Doc. 32, p. 2 ¶ D). The parties also agree that Warrick refuses Green's direct order. (Doc. 21 ¶ 10; Doc. 32, p. 2 ¶ D). Green then ascends the stairs to the control bubble and approaches Warrick. Green again gives Warrick direct orders to remove himself from the front of the bubble and return to his cell. Green's left arm is completely outstretched, she touches Warrick's right shoulder with her left hand, and deploys OC spray. Warrick then strikes Green in the upper head and body, with his right fist, approximately six times. Warrick then runs down the control bubble stairs. Defendants Harrison and Barksdale run towards Warrick and take him to the ground. Warrick is restrained with handcuffs on the ground. Defendants Harrison and Barksdale then assist Warrick to his feet, and he is escorted out of the block to receive medical treatment.

Regarding the deployment of OC spray, some application of force was clearly necessary due to Warrick's admitted refusal to obey direct orders. "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (per curiam) (explaining that the use of chemical agents is not a *per se* constitutional violation). Courts have widely upheld the reasonableness of using OC spray to gain compliance when a prisoner ignores orders from correctional officers. *See, e.g., Martin v. Wetzel*, 2021 WL 2926005, at *10 (W.D. Pa. July 12, 2021) (finding the use of OC spray necessary where the plaintiff "had covered the windows of his cell with a sheet" and "refused six orders…to come to the cell's door, uncover it, and cuff up."); *Easley v. Tritt*, 2021 WL 978815, at *15 (M.D. Pa. Mar. 16, 2021) (use of OC spray necessary to gain compliance when inmate ignored several orders to come to his cell's door and submit for handcuffing); *Jones v. Wetzel*, 2017 WL 4284416, at *7-10 (W.D. Pa. Sept. 27, 2017) (officer's use of OC spray was reasonable when inmate would not return items from his cell, covered his cell window, and refused multiple orders to uncover it).

Likewise, regarding the actions of Defendants Harrison and Barksdale, some application of force was clearly necessary to gain control of Warrick after he assaulted Defendant Green. The videotape of the incident decisively refutes Warrick's claim that Defendants Harrison and Barksdale applied force in an intentionally malicious or sadistic

manner. *See Jones*, 2017 WL 4284416, at *10 (granting summary judgment where videotape evidence "clearly undermine[d] any potential determination that [there] was a malicious or sadistic use of force."). The video shows Warrick running from the control bubble after repeatedly striking Defendant Green in the head and body, and Defendants Harrison and Barksdale immediately running towards Warrick to stop him from fleeing. Nothing in the movements or body language of Harrison and Barksdale supports an inference of malicious or intentional misconduct. The officers do not appear irritated or upset. Rather, they are apprehending an inmate that just assaulted a correctional officer. The video shows the officers lifting Warrick from the ground in a fluid motion and carrying him off the block in a smooth manner. Additionally, the handheld video of the escort to medical, and subsequent escort to two cells, indisputably shows that the officers did not use any other excessive physical force against Warrick. Defendants Harrison and Barksdale appear to show restraint and professionalism despite Warrick's recalcitrance. Consequently, the first two factors weigh in favor of summary judgment.

The third *Whitley* factor considers the extent of the injury inflicted. While the lack of significant injury weighs against an excessive force claim, it is not dispositive. *Aruanno v. Maurice*, 2019 WL 5597653, at *2 (3d Cir. Oct. 30, 2019); *Wilkins v. Gaddy*, 559 U.S. 34, 38) (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Here, other than wrist pain from the handcuffs and irritation to the face

from the OC spray, there is no record evidence of any other injury. (Doc. 21-8). Warrick received prompt medical treatment following the incident and has failed to adduce any evidence indicating that he sustained serious or lasting injuries from the April 19, 2021 incident.[3] *See, e.g., Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2018) ("temporary discomfort" from OC spray did not support a constitutional violation). This factor decidedly favors summary judgment.

As to the fourth factor, there was a reasonable threat to the officers' safety, as well as other inmates' safety. The purpose in securing Warrick, who was combative, was initially in response to the assault on Defendant Green and then to gain control over Warrick. Warrick's actions put his own safety, as well as the officers' safety, at risk. Given Warrick's disruptive behavior and refusal to follow orders, Defendants' response was objectively reasonable under the circumstances. Consequently, this factor also weighs in favor of summary judgment.

As to the fifth factor, the record reflects that the force ceased when Warrick stopped running and the officers regained control. Courts must bear in mind that drawing a line as to where force should cease must be approached practically, "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,' making 'allowance for the fact that [ ] officers are often forced to make split-second judgments—in

---

[3] The uncontroverted record reflects that the incident occurred on April 19, 2021, at 1:10 p.m., and Warrick was treated in the medical department on April 19, 2021, at 1:15 p.m. (Doc. 21-8). The medical records further reflect that Warrick complained only of wrist pain from the handcuffs and face irritation from OC spray. (*Id.*).

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). This factor, like each of the others, supports summary judgment.

In summary, the record evidence would lead a reasonable trier of fact to find that Defendants Green, Barksdale, and Harrison used the amount of force necessary to control Warrick under the circumstances. *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009); *see also Whitley*, 475 U.S. at 319; *Fuentes v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain order). No portion of the record supports an assertion that Defendants Green, Barksdale, and Harrison acted maliciously or sadistically to cause harm. Rather, they acted to gain control over an inmate that refused to obey orders and assaulted a prison staff member.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Warrick has wholly failed to meet this burden. It is clear on the record that Defendants Green, Barksdale, and Harrison acted in a good faith effort to restore order and discipline. Defendants Green,

Barksdale, and Harrison are therefore entitled to an entry of summary judgment on Warrick's Eighth Amendment excessive force claim.

### C.   Claim for Compensatory Damages

Warrick's prayer for relief for compensatory damages fails as a matter of law. With respect to his request for compensatory damages, the Prison Litigation Reform Act ("PLRA") bars such claims for purely emotional distress damages in the absence of any physical injury. Rather:

> The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); see also Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003)...Accordingly, [where an inmate-plaintiff claims damages for emotional or mental injury] § 1997e(e) bars him from recovering compensatory damages on his federal claims. See Herman v. Holiday, 238 F.3d 660, 666 (5th Cir. 2001) (holding that § 1997e(e) barred damages claims based on emotional distress stemming from fear of asbestos exposure); Davis v. Dist. of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding that § 1997e(e) barred claims for emotional injury despite physical manifestations of weight loss, appetite loss, and insomnia).

Michel v. Levinson, 437 F. App'x 160, 163-64 (3d Cir. 2011). The record reflects that Warrick suffered wrist pain and a red/irritated face. (Doc. 21-8). Warrick has not submitted any evidence that he suffered compensable physical harm. To the extent that Warrick is attempting to set forth a claim for compensatory damages based upon emotional distress alone, his failure to establish any compensable physical injury resulting from this alleged constitutional infraction precludes any recovery for these damages under the PLRA. The Court will grant Defendants' motion on this ground.

16

## IV. Conclusion

Based on the foregoing, the Court will grant the Rule 56 motion (Doc. 20) by Defendants Buelto, Green, Barksdale, and Harrison, and enter judgment in their favor. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: May 8, 2024