## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAUN WARRICK,                    :        Civil No. 3:23-cv-591
                                  :
           Plaintiff              :        (Judge Mariani)
                                  :
      v.                          :                    **FILED**
                                  :                  **SCRANTON**
SECRETARY LAUREL HARRY, *et al.,* :
                                  :                   APR 28 2025
           Defendants             :              PER_____JKC_____
                                                      DEPUTY CLERK

### MEMORANDUM

Plaintiff Shaun Warrick ("Warrick"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. §

1983. (Docs. 1, 1-1). The matter is proceeding via a second amended complaint against

Secretary Laurel Harry[1], former Secretary John Wetzel, and former Executive Deputy

Secretary Tabb Bickell. (Doc. 80). Warrick alleges violations of his rights under the Eighth

and Fourteenth Amendments. (*Id.*).

Presently pending before the Court is Defendants' motion (Doc. 89) to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is ripe for resolution. For

the reasons set forth below, the motion will be granted in part and denied in part.

---

[1]    Laurel Harry is the current Secretary of the Pennsylvania Department of Corrections and,
previously, was the Superintendent/Facility Manager at the State Correctional Institution at Camp Hill,
Pennsylvania.

I.    **Allegations of the Second Amended Complaint**

Warrick alleges that, on June 29, 2021, Defendants made a collective decision to place him on the Restricted Release List ("RRL"). (Doc. 80 ¶ 21). He asserts that Defendants made this decision without determining that Warrick posed a security threat. (*Id.* ¶ 22). As a result of his placement on the RRL, Warrick alleges that he has been subjected to "deprivation of human necessities" for approximately 39 months. (*Id.* ¶¶ 24-26).

Warrick states that he was listed as stability code-D inmate under a Pennsylvania Department of Corrections' ("DOC") policy.[2] (*Id.* ¶ 27). Warrick asserts that a stability code-D refers to inmates with an active mental health diagnosis and inmates that are taking medication for the diagnosis. (*Id.*). Warrick alleges that Defendants had knowledge of his mental health issues due to his stability code and knew of the alleged risks of being placed on the RRL. (*Id.* ¶¶ 27-33). He further alleges that Defendant Wetzel previously admitted that he was aware of the effects of long-term solitary confinement. (*Id.* ¶¶ 34, 39-40).

Warrick asserts that Defendant Harry became Secretary of the DOC and allegedly created a new policy that would allow more privileges for inmates in the Restricted Housing Unit, but not for those inmates on the RRL. (*Id.* ¶ 43).

---

[2]    A prisoner's stability code determines the amount of mental health supervision a prisoner receives.

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations, … a formulaic recitation of the elements of a cause of action will not do." *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that,

3

because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] -that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time. *Id.*

## III. Discussion

### A. Statute of Limitations

Defendants first argue that all claims against Wetzel and Bickell must be dismissed because they are time-barred by the applicable statute of limitations. (Doc. 92, at 8-11).

4

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions and state tort medical malpractice claims in Pennsylvania is two years. *See id.*; PA. CONS. STAT. ANN. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599.

Warrick's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations. The initial complaint was filed within the statute of limitations on April 2, 2023, and the operative second amended complaint identifying Wetzel and Bickell as Defendants was filed outside of the statute of limitations, on October 14, 2024. (Docs. 1, 80). The claims against Wetzel and Bickell will be considered timely only if the second amended complaint relates back to April 2, 2023, when the initial complaint was filed.

"If the amendment relates back to the date of the filing of the original complaint, the amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (citing *Singletary v. Pennsylvania Dep't of Corrs.*, 266 F.3d 186, 189 (3d Cir. 2001)). When a plaintiff amends

the complaint to change a defendant or "the naming of" a defendant, "a plaintiff must show

that: (1) the claim or defense set forth in the amended pleading arose out of the conduct,

transaction or occurrence set forth in the original pleading; (2) within [90 days], the party or

parties to be added received notice of the institution of the suit and would not be prejudiced

in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake

concerning his or her identity, he or she would have been made a party to the action." *Id.* at

221 (citing *Singletary*, 266 F.3d at 194).

The claims in the operative second amended complaint and the claims in the initial

complaint are primarily based on the same factual allegations—Warrick's placement on the

RRL. The Court now turns to the question of notice.

"[T]he notice received must be more than notice of the event that gave rise to the

cause of action; it must be notice that the plaintiff has instituted the action." *Singletary*, 266

F.3d at 195. And notice of the action may be actual or constructive. *See id.* In his brief in

opposition to the motion to dismiss, Warrick essentially argues that Defendants Wetzel and

Bickell had actual knowledge of his RRL placement because, pursuant to DC-ADM 802,

when a facility manager requests that an inmate be placed on the RRL, the facility manger

must provide a written rationale to the Executive Deputy Secretary (Tabb Bickell), and that

request must be forwarded to the DOC Secretary (John Wetzel). (Doc. 98, at 1-2).

However, the question is not whether Wetzel and Bickell knew of Warrick's placement on

the RRL. The question instead is whether Wetzel and Bickell had knowledge of the action

against them.  *See Singletary*, 266 F.3d at 195.  Warrick has thus failed to establish that

Wetzel and Bickell had actual knowledge of this action.

As to constructive notice, the Third Circuit has recognized "two possible methods by

which the district courts could impute notice under Rule 15(c)(3)."  *Garvin*, 354 F.3d at 222.

The "shared attorney" method "is based on the notion that when the originally named party

and the parties sought to be added are represented by the same attorney, 'the attorney is

likely to have communicated to the latter party that he may very well be joined in the

action.'"  *Id.* at 222-23 (quoting *Singletary*, 266 F.3d at 196).  The "identity of interest"

method "'generally means that the parties are so closely related in their business operations

or other activities that the institution of an action against one serves to provide notice of the

litigation to the other.'"  *Id.* (quoting *Singletary*, 266 F.3d at 197) (quoting 6A *Charles Alan

Wright et al.*, Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)).

"The relevant inquiry under" the shared attorney method of constructive notice "is

whether notice of the institution of this action can be imputed to [the newly named

defendant] within the relevant…period…by virtue of representation…shared with a

defendant originally named in the lawsuit."  *Singletary*, 266 F.3d at 196.  On June 6, 2023,

Attorney Jeffries entered his appearance for the originally named Defendants.  (Doc. 12).

Attorney Jeffries did not enter his appearance for Wetzel and Bickell until December 19,

2024.  (Doc. 86).  He did not enter his appearance for Wetzel and Bickell at any time before

Warrick named them as Defendants.  Moreover, the initial complaint only named

Defendants who worked at the State Correctional Institution at Camp Hill ("SCI-Camp Hill").

(Doc. 1).  The second amended complaint is the first time that Warrick named individuals

who worked at the Central Office—Wetzel and Bickell.  (Doc. 80).  Because Warrick never

identified any Defendants at the Central Office until he filed his second amended complaint,

Attorney Jeffries is not "likely to have communicated to [Wetzel and Bickell] that [they] may

very well be joined in the action." *Garvin*, 354 F.3d at 223 (quoting *Singletary*, 266 F.3d at

196).  It is thus clear that the shared attorney method of constructive notice cannot apply to

the present action.

　　"We also will impute notice if the parties are so closely related in their business

operations or other activities that filing suit against one serves to provide notice to the other

of the pending litigation." *Garvin*, 354 F.3d at 227.  But, "absent other circumstances that

permit the inference that notice was actually received, a non-management employee…does

not share a sufficient nexus of interests with his or her employer so that notice given to the

employer can be imputed to the employee for Rule 15(c)(3) purposes." *Singletary*, 266 F.3d

at 200.  Accordingly, "a staff level position alone cannot serve as a basis for finding an

identity of interest with an employer entity defendant, because a staff level position is not

high enough in the employment hierarchy to conclude that the interests are identical

between the entity and the staff member." *Delgadillo v. Department of Corrections*, 2019

WL 5077749, at *5 (M.D. Pa. Aug. 22, 2019).  In the prison setting, courts have found that

correctional officers do not have an identity of interest with the entity for which they work,

those higher in the prison hierarchy, or even co-workers at the same staff level. *See, e.g.*, *id.*; *Ballard v. Williams*, 2012 WL 4435118, at *4 (M.D. Pa. Sept. 24, 2012) (summarizing the Third Circuit's conclusion that "the staff psychologist had no administrative or supervisory duties at the prison, and thus his employment alone could not serve as a sufficient basis to find an identity of interest, 'because [he] was clearly not highly enough placed in the prison hierarchy for us to conclude that his interests as an employee are identical to the prison's interests."). As stated, the originally named Defendants worked at SCI-Camp Hill and Wetzel and Bickell work at the DOC Central Office, an entirely different facility and location. The Court therefore cannot infer that Wetzel and Bickell had constructive knowledge through the identity of interest method.

"[N]otice and the absence of prejudice" are two separate elements of Rule 15(c)'s second prong, "each of which must be satisfied" for relation back to occur. *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 (3d Cir. 1996). Accordingly, Wetzel and Bickel do not have to demonstrate the prejudice they would face having to now defend against the action. *See id.* However, in the interest of thoroughness, the Court notes that "[t]he 'prejudice' to which the Rule refers is that suffered by one who for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Garvin*, 354 F.3d at 220 n.6 (internal quotations omitted) (quoting *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995)). In this case, Wetzel and Bickell would be forced to defend against factual allegations regarding

an incident that allegedly took place four years earlier.  Because the statute of limitations

permits only a two-year span, and the incident here occurred four years prior, Wetzel and

Bickell would likely be prejudiced in constructing their defense.  The Court will grant

Defendants' motion to dismiss the claims against Wetzel and Bickell as time barred.

> B.    Eighth Amendment Claims

>> 1.    **Deliberate Indifference to Medical Care Claim**

Warrick alleges that Defendants[3] were deliberately indifferent to his serious need for

mental and physical health care.  (Doc. 80, at 13).  He contends that Defendants placed him

on the RRL despite being aware of the risks associated with placing an inmate with a pre-

existing mental health condition on the RRL.  (*Id.*).  Defendants argue primarily that they are

non-medical prison officials who cannot be held liable for deliberate indifference absent

actual knowledge or reason to believe that prison doctors were mistreating or not treating

Warrick.  (Doc. 92, at 11-12).

To succeed on an Eighth Amendment denial of medical care claim, the plaintiff must

demonstrate: (1) that they had a serious medical need; and (2) that prison officials were

deliberately indifferent to that need.  *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999).  A serious medical need exists when a "failure to treat can be expected to lead to

substantial and unnecessary suffering, injury, or death."  *Colburn v. Upper Darby Twp.*, 946

---

[3]    Warrick sets forth his claims against all three Defendants—Harry, Wetzel, and Bickell—
and Defendants frame their arguments on behalf of all three Defendants.  For the sake of congruence, the
Court uses "Defendants" in addressing the Eighth and Fourteenth Amendment claims.

F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *see Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

At the same time, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Kennedy v. S.C.I. Rockview Emps.*, 2010 WL 4853959, at *4 (M.D. Pa. Nov. 22, 2010) (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)) ("[C]ourts give prison medical personnel wide latitude in the diagnosis and treatment of inmates [and] should 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment…which remains a question of sound professional judgment.'"). An inmate's disagreement with the nature of the medical treatment they receive is therefore not enough to establish deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Further, "[i]f a prisoner is under the care of medical experts…a non-medical

prison official will generally be justified in believing that the prisoner is in capable hands."
*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Warrick asserts that Defendants were aware that prison doctors were mistreating him because "the claims advanced [ ] by [him] have been expounded upon...since the 1970s and 1980s." (Doc. 98, at 2-3). Warrick's general allegation that Defendants should have known of the alleged mistreatment based on "[a] Culture of Harm" is insufficient to establish the scienter requirement of deliberate indifference. (*Id.*). There is no indication that any medical personnel failed to treat Warrick or that his mental and physical health treatment plan or protocol was wholly inadequate. (*See* Doc. 80). Nor are there any allegations that Defendants were aware of any mental and physical requirements and deliberately ignored them. (*See id.*). Instead, Warrick alleges that individuals in solitary have limited ability to purchase medication and hygiene products and that mental health personnel assigned to the solitary confinement units provide inadequate care. (*Id.* ¶ 11(3), (4)). Warrick's complaints about medications, and the type of mental health services rendered, amount to little more than disagreement with treatment methods, which is insufficient to state a constitutional violation. *See Spruill*, 372 F.3d at 235 ("[m]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation) (citations omitted).

Moreover, by Warrick's own averments, Defendants are not medical providers and have not treated him. "[A]bsent a reason to believe (or actual knowledge) that prison

12

doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236. Additionally, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Because the second amended complaint is devoid of allegations from which the Court can plausibly infer that Defendants were deliberately indifferent to Warrick's serious medical needs, the motion to dismiss this claim will be granted.

### 2. Conditions of Confinement Claim

Warrick next alleges that Defendants were deliberately indifferent to the potential for serious harm caused by subjecting him to prolonged solitary confinement. (Doc. 80, at 14). He asserts that Defendants disregarded his health and safety by placing him on indefinite RRL status. (*Id.*).

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The Eighth Amendment does not, however, require that prisons be comfortable. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citing *Rhodes*, 452 U.S. at 349).

13

To successfully establish an Eighth Amendment violation, plaintiffs must make both an objective and subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, the prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana*, 934 F.3d at 373 (quoting *Farmer*, 511 U.S. at 834). The deprivation alleged must be "objectively, sufficiently serious" so as to have resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes*, 452 U.S. at 347). A prisoner must then show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847). The prisoner "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-43) (internal quotation marks omitted).

Defendants argue that Warrick's claim fails both prongs of the analysis. (Doc. 92, at 12-21). They contend that there are no allegations in the second amended complaint that Warrick's placement on the RRL rises to the level of an objectively, sufficiently serious condition. (*Id.*). They maintain that Warrick merely challenges his RRL placement generally and his claims are conclusory in nature, which they argue is an insufficient basis for his

14

Eighth Amendment claim. (*Id.*). *See Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007) (finding DOC procedures for RRL placement constitutional).

Warrick alleges that Defendants placed him on the RRL without determining that he posed a security threat or met the other criteria warranting placement on the RRL. (Doc. 80 ¶ 15-16, 22). He maintains that the length of time he spent in solitary confinement under harsh conditions combined with the indefinite nature of his RRL status rises to the level of cruel and unusual punishment. (*Id.* at 14). Warrick contends that he has spent over 39 months on the RRL. (*Id.*). During this time, he alleges a number of restrictive conditions, including little to no social interaction; little to no environmental stimulation; little to no mental health treatment; little to no medical treatment; little to no sleep; little to no exercise; and little to no health aid. (*Id.* ¶ 11). He also cites to secondary sources that discuss the negative impact of solitary confinement on inmates. (*Id.* ¶¶ 13, 35-38). Defendants argue, however, that Warrick's claim that he has been subjected to these conditions is unsupported by the allegations in the second amended complaint. (Doc. 92, at 14). They argue further that Warrick's claim is insufficient to establish an Eighth Amendment violation. (*Id.* at 14-21).

At this stage in the proceedings, Warrick's allegations are sufficient to state a cause of action that Defendants acted with deliberate indifference to his well-being. The Court will deny Defendants' motion to dismiss the Eighth Amendment conditions of confinement claim.

C.    Fourteenth Amendment Claim

Lastly, Warrick alleges that Defendants violated his Fourteenth Amendment due process rights. (Doc. 80, at 14-15). He alleges that Defendants initiated his RRL status and continued it without affording him the opportunity for meaningful review or appeal. (*Id.*).

The analysis for a procedural due process claim begins with determining whether the liberty interest asserted is protected under the Fourteenth Amendment. *Montanez v. Sec'y Dep't Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014). If the asserted interest is protected, the court must determine what process is required to protect it. If the interest is not protected, no process is necessary. *Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010).

Prisoners do not enjoy the same liberty interests as non-incarcerated citizens. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which…imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (emphasis in *Williams*) (quoting *Griffin*, 112 F.3d at 708). "The more restrictive the conditions are, the shorter the period of confinement is tolerated. Conversely, the less restrictive, the longer the period is before it becomes a hardship." *Wayne v. Clark*, 2022 WL 17993131, at *7 (E.D. Pa. Dec. 29, 2022).

16

Third Circuit precedent is clear, however, that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Placement on the RRL alone similarly will not give rise to a liberty interest. *See Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 67 n.6 (3d Cir. 2013) ("To the extent that Huertas' due process claim is based on his placement on the RRL, a list of inmates who may only be released from administrative custody upon prior approval of the Secretary of Corrections, we agree with the District Court that this does not implicate a constitutionally protected due process right."); *see also Bowen*, 248 F. App'x at 304.

Thus, to the extent Warrick seeks to challenge his initial placement on the RRL, this claim is not viable. However, Warrick also challenges his alleged lack of meaningful review and opportunity to appeal his RRL status. There is no bright line rule as to when the duration of an inmate's segregation becomes atypical. *Williams*, 848 F.3d 549 at 561-62; *see Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (holding eight years in prolonged, indefinite solitary confinement implicated a liberty interest); *Griffin*, 112 F.3d at 708 (holding fifteen months in disciplinary custody did not implicate due process concerns). In his second amended complaint, Warrick alleges that he was on the RRL for over 39 months. (Doc. 80, at 14). It is plausibly alleged that confinement in prolonged isolation for this length of time may be considered atypical. Given Warrick's alleged lengthy RRL placement and

17

the purported absence of opportunity for meaningful review, the Court finds that he has alleged grounds to be entitled to an opportunity to be heard and the application of traditional due process hearing procedures for his continued detention.  Whether Warrick faced an atypical hardship and received inadequate process for his continued placement on the RRL can only be addressed after full discovery.  The Court will deny Defendants' motion to dismiss the Fourteenth Amendment claim.

## IV.    Conclusion

Consistent with the foregoing, Defendants' Rule 12(b)(6) motion (Doc. 89) to dismiss will be granted in part and denied in part.

A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: April 28, 2025